Allen H. Schwartz,  SBN 108126
Attorney at Law
111 W. St. John Street, Suite 555
San Jose, CA 95113
Tel: (408) 298-9494
Fax: (408) 298-4551

**E-FILING**

**Filed**

OCT 2 2 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Attorney for Petitioner LIONEL RUBALCAVA

UNITED STATED DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

**C07 05379 SBA**

LIONEL RUBALCAVA,

      Petitioner,

    v.

TOM FELKER, Warden,
High Desert State Prison,
Susanville, California,

      Respondent.

Case No.

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO TITLE 28 U.S.C. §§ 2254**

INTRODUCTION

Petitioner Lionel Rubalcava, a person in the custody of the State of California,

through his counsel, Allen H. Schwartz, files this Petition for a Writ of Habeas

Corpus pursuant to Title 28, United States Code, Section 2254, alleging violations

of his United States constitutional rights as set forth below.

1

Rubalcava is currently serving a 31 years to life term of incarceration in High Desert State Prison at Susanville, California, following his conviction for attempted murder while personally using a firearm.

Petitioner respectfully asks this Court to relieve him of the judgment and punishment imposed on him, in violation of his Constitutional rights, when the California Superior Court for Santa Clara County entered judgment against him, and the cumulative errors at his state proceedings violated his Federal constitutional rights to due process and a fair trial, in violation of the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.

The proceeding in California Superior Court in Santa Clara County is thus a state action that violated petitioner's Federal constitutional right to due process of law, a fair trial, and violated his Federal constitutional protections against cruel and unusual punishment.

THE CONVICTION AND SENTENCE

Lionel Rubalcava, through this petition, challenges the conviction and sentence imposed on him by the Superior Court of the State of California, for the County of Santa Clara, in the case of People v. Lionel Rubalcava, Case No. CC245628. In August, 2004, petitioner was committed to the California Department of Corrections at High Desert State Prison at Susanville, California for a 31 year to life term. Petitioner's CDC number is P - 77820.

## STATEMENT OF THE CASE

An information was filed on June 14, 2004 charging Petitioner with one count of attempted, premeditated murder in violation of California Penal Code §§664(a)/187/189. There were various special allegations, including the allegation that the crime was committed for the benefit of a criminal street gang pursuant to California Penal Code § 186 .22(b)( 1). Petitioner was convicted at jury trial of the attempted murder and all allegations were found true and/or admitted by Petitioner in the course of trial.

Petitioner was sentenced to a term of life with the possibility of parole for the attempted murder and further and consecutive sentences of 25 years to life, (Cal. Pen. C. § 12022.53(d)), 5 years, (Cal. Pen. C. §667(a)(1)) and 1 year, (Cal. Pen. C. §667.5(b)).

## DIRECT APPEAL

Petitioner appealed his conviction to the California Court of Appeal, Sixth Appellate District, in case number H027786. The conviction was affirmed in an unpublished opinion filed on December 28, 2005. Petitioner then filed a Petition for Review with the California Supreme Court, which was denied on March 25, 2006.

Petitioner has previously exhausted his California state remedies, as required by 28 U.S.C. § 2254(b). His prior appeals and state petitions "fairly presented the substance of his federal claim[s] to the state courts." *Chacon v. Wood,* 36 F.3d 1459, 1467 (9th Cir. 1994), quoting, *Henry v. Estelle*, 993 F.2d 1423,

3

1425 (9th Cir. 1993).

## COLLATERAL REVIEW IN STATE COURT

On March 2, 2007,  Petitioner filed a writ of habeas corpus petition with the California Supreme Court.  That petition, which raises all the issues in the instant petition  was denied on the merits on August 15, 2007.

Thus, all issues raised in this petition have been raised in the California Supreme Court and was "presented with a fair opportunity to rule on the merits of the claim."    *Harmon v. Ryan*, 959 F.2d 1457, 1460 (9th Cir. 1992).  Accordingly, the Petitioner has exhausted his state claims. *Id.*, see *Duckett v. Godinez*, 67 F.3d 734, 739, n. 1 (9th Cir. 1995), cert. denied, 116 S. Ct. 1549 (1996); *Chacon v. Wood*, 36 F.3d 1459, 1467 (9th Cir. 1994).

## COLLATERAL REVIEW IN FEDERAL COURT

There has been no prior petition for Federal Habeas Corpus filed on this case.

## GROUNDS FOR RELIEF

The District Court has jurisdiction over this Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, in that Petitioner is being confined in violation of the Constitution and laws of the United States and questions of Federal law are at issue.  Petitioner's incarceration at a California correctional facility establishes confinement for purposes of a Federal Habeas Corpus petition.  28 U.S.C. section 2254(a).

1
2
3
4

This Writ of Habeas Corpus is properly brought in the Northern District of California, as the petitioner was convicted in California Superior Court in Santa Clara County, within the Northern District of California.  28 U.S.C. section 2241(d).

5
6
7

Petitioner raises three grounds on appeal, more fully described in the accompanying memorandum of points and authorities.

8
9
10
11

First, Rubalcava's Federal constitutional right to a fair and impartial jury under the Sixth and Fourteenth Amendments by a biased or prejudiced during the state proceedings.

12
13
14
15

Second, Rubalcava's Federal constitutional right under the Sixth and Fourteenth Amendments to confront  and cross - examine witnesses against him were violated with the admission of unreliable hearsay through an expert  witness.

16
17
18
19

Third, a claim of actual innocence through the recantation of the victim / witness who now avers that Petitioner is not the person who shot  him, violates the Petitioner's right to a fair trial, under the Fifth and Fourteenth Amendments.

20
21

Facts and argument in support of these grounds are contained in the accompanying memorandum of points and authorities.

22
23
24
25

Petitioner asks this Court to set aside his conviction and release petitioner from custody, remanding the case for a new trial before the Santa Clara County Superior Court.

26
27
28

5

1

## CONCLUSION

2

3    WHEREFORE, petitioner prays that the Court grant petitioner relief to

4    which he is entitled in this proceeding.

5    October 21, 2007                        Respectfully submitted,

6

7

8

9

10                                     Allen H. Schwartz
                                       Attorney for Petitioner

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1  Allen H. Schwartz, SBN 108126
2  Attorney at Law
   111 W. St. John Street, Suite 555
3  San Jose, CA 95113
4  Tel: (408) 298-9494
   Fax: (408) 298-4551
5

6
   Attorney for Petitioner LIONEL RUBALCAVA
7

8

9
                 UNITED STATED DISTRICT COURT
10
              NORTHERN DISTRICT OF CALIFORNIA
11
                    SAN JOSE DIVISION
12

13

14
   LIONEL RUBALCAVA,                    Case No.
15
                Petitioner,
16
                                        MEMORANDUM OF POINTS AND
17      v.                              AUTHORITIES IN SUPPORT OF
18                                      PETITION FOR WRIT OF   HABEAS
   TOM FELKER, Warden,                  CORPUS PURSUANT TO TITLE 28
19 High Desert State Prison,            U.S.C. §§ 2254
   Susanville, California,
20
21              Respondent.

22

23

24                    STATEMENT OF THE FACTS

25      The victim, Raymond Rodriguez, was shot on April 5, 2002 in front of his

26 home in San Jose. Rodriguez had been a member of the Varrio East Side

27 Norteno gang.   Rodriguez struggled with identification and repeatedly gave
28

                                    7

inconsistent descriptions of the shooter. At trial however, Rodriguez identified Petitioner as the shooter. Rodriguez's little brother Eric, who witnessed the shooting, also identified Petitioner as the shooter at trial. Before trial however, Eric also struggled with identification and gave differing descriptions of the shooter. David Gonzales, Jr. also witnessed the shooting. Before trial, he had indicated to police in the course of making a six-pack identification that Petitioner "looked like" the shooter. At trial however, he ultimately testified that Petitioner was not the shooter.

The gang expert testified that Petitioner was a member of the West Side Mob gang and that David Gonzales, Jr. was a member of the Varrio Horshoe gang. Although these gangs are under the same "Norteno" umbrella, there was a conflict between these two gang sub-sets at the time of the shooting. The expert opined that Rodriguez was apparently shot for associating with Gonzales, Jr.

Petitioner forwarded an alibi defense, and presented evidence that he was on a date with a girl and could not have been the shooter. The girl who was his date testified at trial as did Petitioner. A police officer also testified in the defense case-in-chief that Rodriguez indicated the day after the shooting that the shooter was a "Sureno" gang member.

I.
## JUROR MISCONDUCT

After the jury was sworn and the presentation of evidence had commenced,

8

a law enforcement agent testifying for the prosecution - Officer Fonua - disclosed to the trial court that he knew one of the jurors. The juror's wife was the sister of his girlfriend. They regularly saw each other at holiday gatherings and had actually been together the weekend before Officer Fonua testified. Officer Fonua testified on a Tuesday, so they had been together just a couple of days before he took the witness stand. The juror was a political consultant, and although he had disclosed in voir dire that he knew the County District Attorney and the Sheriff, he failed to disclose that he knew Officer Fonua.

The trial court asked the juror if the relationship would affect his ability to be fair and impartial and if the juror would give Officer Fonua's testimony any greater weight. Unsurprisingly, the juror responded in the negative. Petitioner's counsel requested that the juror be removed, but the trial court denied the request.

The United States Supreme Court "has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." (*Smith v. Phillips*, 455 U.S. 209, 215, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982).) However, the Supreme Court has not yet decided whether due process requires a trial court to hold a hearing, *sua sponte*, whenever evidence of juror bias comes to light. (*Sims v. Rowland*, 414 F.3d 1148, 1153 (9th Cir. 2005).) The Ninth Circuit Court of Appeals has adopted a "flexible rule"-- essentially finding that the question should be answered on a case-by-case basis, taking into consideration the content of the allegations, the

seriousness of the misconduct and the reliability of the source. (*Sims v. Rowland, supra*, 414 F.3d. at p. 1155.) It would have been imminently more helpful had the trial court conducted a fuller hearing on the matter, however Petitioner is left with the record in the condition it is in.

The Sixth Amendment to the Constitution guarantees a criminal defendant a right to a fair and impartial jury[1]. "The bias or prejudice of even a single juror is enough to violate that guarantee." (*United States v. Gonzales*, 214 F.3d 1109, 1111 (9tl~ Cir. 2000); see. also *Dyer v. Calderon*, 151 F.3d 970, 973 (9th Cir. 1998).) As a result, "the presence of a biased juror cannot be harmless; the error requires a new trial without a showing of actual prejudice." (*Dyer v. Calderon, supra*, 151 F.3d at p. 973, n.2; see, also, *United States v. Martinez-Salazar*, 528 U.S. 304, 316, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000): "Nor did the district court's ruling result in the seating of any juror who should have been dismissed for cause. As we have recognized, that circumstance would require reversal.")

Challenges for cause during jury selection are the usual means by which partial or biased jurors should be eliminated. Disqualification of a juror for cause requires a showing of either *actual* or *implied* bias --"that is. . . bias in fact or bias conclusively presumed as a matter of law." (47 Am.Jur.2d Jury °266 (1995).)

---

[1]    This right applies to defendants in state court via the Fourteenth Amendment. See, *Williams v. Florida*, 399 U.S. 78, 86, 90 S.Ct. 1893; 26 L.Ed.2d 446 (1970).)

Although "bias can be revealed by a juror's express admission of that fact, . . . more frequently, jurors are reluctant to admit actual bias, and the reality of their biased attitudes must be revealed by circumstantial evidence." (*United States v. Allsup,* 566 F.2d 68, 71, n.3 (9th Cir. 1977).)  Trial courts always accord weight to a juror's statement that he or she can be impartial, however "the juror's assurances that he is equal to this task cannot be dispositive of the accused's rights. . . ." (*Murphy v. Florida*, 421 U.S. 794,800,95 S.Ct. 2031,44 L.Ed.2d 589(1975).)

In the context of Petitioner's case, to establish juror bias, "a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." (*McDonough Power Equipment Inc. v. Greenwood,* 464 U.S. 548, 556, 104 S.Ct. 845, 78 L.Ed.2d 663 (1984); *Sanders v. Lamarque,* 357 F.3d 943, 949 (9th Cir. 2004).) There can he no doubt in the world of litigation that the fact of a personal relationship between a potential juror and a witness is material. The juror was asked in *voir dire* if he had some affiliation with law enforcement, and he disclosed those persons  in law enforcement that he knew - with the exception of Officer Fonua, a man with whom he had just spent the past weekend in a family gathering. That the juror identified specific persons in law enforcement that he knew but singularly failed to include Officer Fonua smacks of dishonesty rather than mere inadvertence.

1   Petitioner's trial counsel would have requested the trial court remove the

2   juror in question for cause during jury selection had she known of the relationship

3

4   between the juror and Officer Fonua and the extent of that relationship. (See,

5   Declaration of Counsel, attached hereto and incorporated by reference herein as

6   Exhibit A.) There can be no question that reasonable jurists would have granted

7

8   this request, it being imminently wise to err on the side of caution in respect of

9   seating jurors who have personal relationships with witnesses in the litigation.

10  Petitioner therefore maintains that bias was present in fact and in law.

11
                                            II.
12                        GANG EXPERT TESTIMONY

13
14      Petitioner and the victim were in the same gang - Norteno. However,

15  Petitioner and the victim did not know each other, and the victim had never seen

16  or met Petitioner before. The prosecution therefore had to come up with some

17
18  reason, having fashioned this shooting as a gang shooting, to explain why one

19  gang member would shoot another random member of his own gang. Enter the

20  gang expert. The expert concluded Petitioner shot the victim due to the victim's

21
22  association with David Gonzales. Jr. because Petitioner's "faction" (West Side

23  Mob) was warring at the time of the shooting with Gonzales, Jr.'s "faction"

24  (Horseshoe). There was no evidence that Petitioner's "faction" had any problem

25
26  with the victim's "faction."

27      In order to develop the specific evidence that the Horseshoe and West

28

                                    12

Side Mob factions were warring, the gang expert would have had to rely on hearsay statements made by individual gang members The accused in all criminal prosecutions has a right  guaranteed by the Sixth Amendment to the Constitution, to confront the witnesses against him.   In *Crawford v Washington*, 541 U S 36, 124 S Ct 1354, 158 L Ed 2d 177 (2004) the United States Supreme Court held that out-of-court statements that are testimonial in nature are inadmissible unless the declarant is unavailable and the accused has had a prior opportunity to cross-examine the declarant.

In the instant case, the expert testified that the shooting of the victim was for the benefit of West Side Mob because David Gonzales, Jr was a member of Horseshoe and Horseshoe and West Side Mob had had a feud going on for at least five years some of it documented and some of it not.   He testified that the on-going feud was significant because through `"investigation", it was "learned" that David Gonzales, Jr associated with Horseshoe and the victim associated with Varrio East Side Nortenos He then concluded that the victim's shooting was "associated with" David Gonzales, Jr., who was "associated with" Horsehoe, which was a faction not associated with West Side Mob because they were feuding. Admittedly, this makes absolutely no sense whatsoever, but this was the expert's opinion and conclusion. It is clear that the expert had to rely on vast amounts of hearsay, obtained and developed as a result of police interrogation of gang members - interrogation designed to gather evidence to present in court in

order to obtain convictions against members of these gangs being prosecuted for their gang activity. Petitioner maintains this type of hearsay is testimonial in nature and should entitle him to the protections afforded by the Sixth Amendment.

Furthermore, in order for a gang enhancement to be found true, there must be substantial evidence to support a finding of the existence of a "criminal street gang" whose members engage in a "pattern of criminal gang activity." (See, *In re Lincoln J.* (1990) 223 Cal.App.3d 322, 327; *In re Leland D.* (1990) 223 Cal.App.3d 251, 260.) "Conclusionary testimony that gang members have previously engaged in the enumerated offenses, based on nonspecific hearsay and arrest information which does not specify exactly who, when, where and under what circumstances gang crimes were committed, does not constitute substantial evidence." (*In re Jose T.* (1991) 230 Cal.App.3d 1455, 1462; see, also, *In re Leland D., supra*, 223 Cal.App.3d at p. 259.)

The Street Terrorism Enforcement and Prevention Act has been around for some years now. The People have long been utilizing police officers to testify as "gang experts" to establish the necessary elements of the Act. These "experts" are typically officers holding gang -orientated assignments (in the past or at the time of trial) within law enforcement departments. It is inescapable that when these officers are questioning individual gang members in relation to specific criminal complaints, they are also questioning gang members to gather the

14

broader information they need in order to be able to give testimony in court to prove the requisite elements of the Act. In fact, it is no coincidence that the practice of preparing so-called "Field Identification Cards" for gang members with whom officers come into contact arose.

In the instant case, the expert spent a significant amount of time going over Petitioner's Field Identification cards. He testified that on multiple occasions Petitioner was stopped by officers and was in the company of individuals who were West Side Mob members. Now, in order to testify that the individuals in Petitioner's company were gang members, the expert would have had to rely upon hearsay.    When officers question gang members to develop information about the gang's criminal activities, since the Act has been in effect for so many years, a reasonably objective observer would understand that the officers are gathering evidence that will be available for use in prosecution of gang cases. Such interrogation is testimonial for Sixth Amendment purposes under *Crawford*. This hearsay violates Petitioner's rights, as he is denied the ability to confront and cross - examine the individuals providing the information relied upon by the expert.

### III.
### VICTIM MISIDENTIFICATION

The victim, Raymond Rodriguez, has signed a declaration under oath (attached hereto and incorporated by reference herein as Exhibit B) attesting that Petitioner is not the person who shot him. (Exhibit B, Paragraph 4.) It is quite

clear from Mr. Rodriguez's declaration that the investigating detective pressured and mislead him into making a bad identification, about which he now feels terrible guilt and remorse.

"If the petitioner asserts his actual innocence of the underlying crime, he must show 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence presented in his habeas petition." (*Schlup v. Delo* (1995) 513 U.S. 298, 327; 115 S.Ct. 851; 130 L.Ed.2d 808). The *Schlup* standard does not require absolute certainty about the petitioner's guilt or innocence. (*House v Bell* (2006)___U.S.___; 126 S.Ct. 2064, 2077; 165 L.Ed.2d 1.) "Because a *Schlup* claim involves evidence the trial jury did not have before it, the inquiry requires the [federal] court to assess how reasonable jurors would react to the overall, newly supplemented record. "(Citations.) If new evidence so requires, this may include consideration of "the credibility of the witnesses presented at trial."(Citations.) (*House v. Bell, supra*, 126 S.Ct. at p. 2078, see, also, *Jackson v. Virginia* (1979) 443 U.S. 307, 330, 99 S.Ct. 2781, 61 L.Ed.2d 560: noting that "in such a case, the habeas court may have to make some credibility assessments.")

There was no physical evidence linking Petitioner to the shooting and the motive offered by the People was extremely tenuous and weak. The only evidence upon which Petitioner was convicted was witness identification. Petitioner has secured new evidence in the form of a recantation by the victim of the

16

positive identification. Petitioner maintains that without this identification, no reasonable juror would have convicted him. In fact, absent the false positive identification, the District Attorney almost surely would not have even filed the charges. As for the victim's little brother (Eric Millan) and his identification of Petitioner, his credibility must be questioned in light of his close relationship with the victim. It is highly likely he simply followed along with his big brother and gave a false positive identification.

## CONCLUSION

For the reasons set forth herein, Petitioner respectfully requests this Court to issue its writ.

Dated: October 20, 2007                    Respectfully submitted,


                                    _____
                                    Allen H. Schwartz
                                    Attorney for Petitioner

17

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that copies of the foregoing PETITION FOR WRIT OF

HABEAS CORPUS¡MEMORANDUM OF POINTS AND AUTHORITIES were

mailed this day to the parties listed below:

Attorney General of the
State of California
Office of the Attorney General
455 Golden Gate Avenue, Suite 1100
San Francisco, CA   94105

TOM FELKER, Warden,
High Desert State Prison,
475-750 Rice Canyon Road
Susanville,  CA 96130

I declare under penalty of perjury that the foregoing is true and correct, and

that this Declaration was executed on October 22, 2003 , at San Jose, California.

ALLEN H. SCHWARTZ

**EXHIBIT A**

03/07/2007  12:39    81846   '14        CHASE LAW GRC         PAGE  02/02

## DECLARATION OF COUNSEL

I, Adrienne Dell, declare that I have personal knowledge of the following, and if called upon to do so, could and would testify competently that:

1. I was Lionel Rubalcava's trial attorney in the Santa Clara County Superior Court in the case of People v. Rubalcava, trial court case number CC245628.

2. During trial, it was revealed one of the jurors, a gentleman, knew Officer Fonua, one of the People's witnesses. The juror had not revealed that he knew Officer Fonua during *voir dire* when asked about law enforcement affiliation/acquaintance, although he did reveal that he knew the county district attorney and sheriff.

3. Had this juror revealed his relationship with Officer Fonua during the jury section process, I would have challenged the juror for cause.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed this __8th__ day of March, 2007 at San Jose, California.

Adrienne Dell

**EXHIBIT B**

1  Barry O. Bernstein, Attorney at Law, SBN#43230
2  Law Offices of Barry O. Bernstein, Inc.
   3727 W. Magnolia Street, Box #767
3  Burbank, California 91510
   Telephone (818) 558-1717 – Facsimile (818) 526-7672
4
5  Attorney for Appellant, LIONEL RUBULCAVA
6           IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
7                   SIXTH APPELLATE DISTRICT, DIVISION _____
8  **THE PEOPLE OF THE STATE OF CALIFORNIA**    )     Appeal No. H027786
              Plaintiff and Respondent,          )     Sup. Ct. No. CC245628
9        v.                                      )
10                                               )
11  **LIONEL RUBULCAVA**                         )
              Defendant and Appellant.           )
12  ─────────────────────────────────────────)
13
14         **DECLARATION OF VICTIM RAYMOND R̶A̶M̶I̶R̶E̶Z̶ Rodriguez**
15
16                        **IN SUPPORT OF APPEAL**
17  I declare under penalty of perjury the following:
18
19  1.  I, Raymond R̶a̶m̶i̶r̶e̶z̶ Rodriguez, am the victim in the matter of *People v. Lionel Rubulcava*, the matter
20      now before this court on appeal.
21  2.  I make this declaration of my own free will and accord.  No promises or threats have been
22      made to me in exchange for this Declaration.
23  3.  I testified at trial in this matter under penalty of perjury.  I am aware of any consequences of
24      my statement in this declaration.
25  4.  I make this declaration because I cannot move forward with my life until the truth is told and
26      this matter is straightened out.  I want to put this behind me.  I do not want Lionel Rubulcava
27      to be in prison if he is not the person who shot me.  The person who really shot me deserves
28      to be in prison.  It is not Lionel Rubulcava.

                                    Rodriguez
                    *Declarations of Raymond R̶a̶m̶i̶r̶e̶z̶ (Victim)*

5. No one forced me to make this statement and no one has made any promises to me in exchange for this statement. I have refused to talk to many people in the past regarding this, however, I have had enough time to think about doing the right thing, I this is why I am now coming forward.

6. I am currently in a wheelchair as a result of the shooting. I and my family have suffered a lot because of this. As much as I want to put this matter behind me, I am willing to make this statement because I want the truth to come out.

7. I did not know, nor do I now personally know, the defendant Lionel Rubulcava, other than facing him in court

8. I was contacted by several private investigator's since the time of the conviction in this case.

9. On or about April 01, 2005, I was contacted by private investigator Anne Fields. She properly identified herself to me as a private investigator working for the Law Offices of Barry O. Bernstein, the attorneys representing the defendant, Lionel Rubulcava.

10. I had agreed to meet with Ms. Fields in person pursuant to a prior telephone conversation I had with her the week before. I did not consent to a recorded statement.

11. Ms. Fields stated she wanted me to make sure that Lionel Rubulcava was the shooter and was properly convicted. I voluntarily agreed to discuss the case with her.

12. I did not know the defendant Lionel Rubulcava prior to the day of the shooting.

13. I am not positive that Mr. Rubulcava was the person who shot me.

14. **I testified at trial that Mr. Rubulcava was the person who shot me. The only reason I testified to this was because Mr. Rubulcava looks like the person who shot me. Second, I was told by Detective Perez [investigating detective] that there were other facts not known to me that existed, that made Mr. Rubulcava the shooter, and therefore made me believe that Mr. Rubulcava was the right person.**

15. I realize now, that I did not tell the truth at trial.

16. **I was and continue to be concerned about the identification process of the defendant.** At the time that I was asked to identify the shooter in court, Detective Perez had previously told me that the identification of Mr. Rubulcava was not the only factor that led to the arrest

Rodriguez
*Declarations of Raymond Ramirez (Victim)*

1    of Mr. Rubulcava.  Detective Perez stated that there were other factors that made him believe

2    that Mr. Rubulcava shot me.

3    17. During the investigation of this case, I was shown several pictures of persons in a

4    photographic line-up.  I picked the photograph of Mr. Rubulcava from the photo line-up that

5    Detective Perez showed me because the person **looked like the person who shot me**. I had

6    and continue to have doubts about this identification.

7    18. Further, at the time that I reviewed the line-up, I was heavily medicated due to my injuries

8    and current hospitalization.  Although I believed this was known and obvious to the police, I

9    never actually told anyone.

10   19. Although the person they showed me looked like the person who shot me, I did not tell

11   detective Perez that it was the person who shot me.  ~~He stated it was the person,~~ I simply

12   stated it looked most like the person who shot me.

13   20. Just prior to being shot, I made direct eye contact with the person who shot me.  The person

14   looked very similar to Mr. Rubulcava.  I remain unsure whether Mr. Rubulcava was this

15   same person.

16   21. I would like to review additional photographs of other people, including other "VST" and

17   "SSP" gang members.  I remain willing to continue to assist in finding the real person who

18   shot me, including additional photographic line-ups.

22. During my interviews with detective Perez, Detective Perez told me that I was shot because

of some girl.  However, at trial, I was told that I was shot because of a gang related incident.

23. On the day of the shooting, I recall observing a truck or SUV drive past me while in my

vehicle.  The vehicle was either green or blue.  I exited my vehicle and walked to a

neighbor's house where I met my friend David Gonzalez.  Mr. Gonzalez advised me that

"somebody had been tripping all day…".  Mr. Gonzalez provided no further information in

this regard.

I recall just before I was shot, witness David Gonzalez ~~told me to run~~.

Told me to go back home

*Rodriguez*

*Declarations of Raymond Ramirez (Victim)*

25. The day that I returned home from the hospital, I spoke with witness David Gonzalez. Mr. Gonzalez stated that he was having some conflict with another person named Lionel Gonzalez on the same day of the shooting.

26. Specifically, David Gonzalez was dating Lionel Gonzalez's girlfriend, Melissa Ray at the same time. This angered Lionel Gonzalez. I am informed and believe that Lionel Gonzalez and David Gonzalez are cousins.

27. I had a conversation with my friend David Gonzalez regarding and unknown person who had come to his house just prior to the shooting.

28. David's house was known for having a lot of drug activity and various people coming and going at this location.

29. The week prior to the shooting, David told me that many people that he did not know had been coming to his residence looking for him. David communicated to me that he was concerned for his safety because of this.

30. Specifically, there was an unknown person who came over who appeared very agitated. David explained to me that this person was angry and wanted David to leave with him. He was identified by David as a West Side Mob gang member.

31. At the time of the shooting, I was a Varrio East Side gang member, a rival gang member of West Side Mob.

32. This person who came over was not identified by David Gonzalez as Mr. Rubulcava.

33. I make this declaration of my own free will and accord. No promises or threats have been made to me in exchange for this Declaration.

34. I testified at trial in this matter under penalty of perjury. I am aware of any consequences of my statement in this declaration.

Dated: 5 · 6 · 05

Raymond Ramirez Rodriguez

Declarations of Raymond Ramirez (Victim)